

FILED
ENTERED
LODGED
RECEIVED
FEB 05 2003 MR
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASH
BY
Received From
SEATTLE
FEB 06 2003

CV 03-05062 #00000002

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WASHINGTON PROTECTION AND ADVOCACY SYSTEM, INC., a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v<br><br>EVERGREEN SCHOOL DISTRICT, and RICHARD MELCHING, in his official capacity as the Superintendent of the Evergreen School District,<br><br>Defendants | No CV03-5062<br><br>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM<br><br>**NOTE ON MOTION CALENDAR: February 28, 2003**<br><br>**[Oral Argument Requested]** |

## I. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Washington Protection and Advocacy System (hereinafter "WPAS") respectfully moves this Court for a preliminary injunction to enforce its statutory and constitutional rights of access to information regarding children who are or may be suffering from abuse, neglect and/or discrimination due to their disabilities while enrolled in the Evergreen School District The requested injunction would require the defendants (hereinafter "the District") to disclose contact information for children who attend school in the Evergreen School District who are, or may have been discriminated against, abused and/or neglected due to their disabilities

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601



## II. Facts

WPAS has been designated by the Governor of the state of Washington as the protection and advocacy system for the state of Washington to provide protection and advocacy services for those individuals in Washington who have mental, developmental, and/or physical disabilities, pursuant to the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U S C §15041, *et seq* , the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C § 10801, *et seq. as amended*, the Protection and Advocacy for individuals with Traumatic Brain Injury ("PATBI") Act, 42 U S.C. § 300d-52, the Protection and Advocacy for Individual Rights ("PAIR") Act, 29 U S C § 794e; and R C W 71A.10.080 *See* Declaration of Mark Stroh at ¶ 3-4, attached as Exhibit 1

The Evergreen School District is located in Clark County, Washington and is fully accredited as a public provider of educational services, including special education, by the State Board of Education pursuant to R C W 28A.305.130 and WAC 180-55-010 *et seq*

In late 2002 WPAS received complaints from a parent whose child is enrolled in the District that the District required children with disabilities to collect garbage and recycling at at least one of its schools (Heritage High School), and also required children with disabilities at Heritage to collect lunchroom tables and chairs after school lunches as part of the school's "Work Experience" program *See* Decl of John Finders at ¶ 2-4, 6, attached as Ex 2 In addition, N F , a child with disabilities who attends Heritage High School, reported that other children with disabilities were also required to collect recyclable trash for a teacher on a daily basis *Id* at ¶ 4 N F 's teacher then had the children cash in the recycling at a local store, collected the funds, and claimed to use it for field trips *Id* Children like N F were made to collect trash on school grounds, dig through garbage cans for recyclables, and perform other janitorial work as part of their educational program at Heritage, and were manipulated to do so by teachers who told them that the janitors needed their help *Id* ¶ 8-9

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

Based upon these complaints, WPAS determined that it had probable cause to believe that N F , as well as other similarly-situated children with disabilities in the District had been abused, neglected and/or discriminated against due to their disabilities Accordingly, WPAS invoked its probable cause authority pursuant to its federal mandates, and on December 6, 2002 sent a probable cause letter to the Heritage High School's Special Services Department, requesting that Heritage produce directory information for other children with disabilities who also are collecting garbage and/or collecting lunch tables and chairs as part of their "Work Experience" program, and/or collecting recycling for the school.[1] *See* Decl of Herivel, Letter from Tara Herivel to Heritage High School, dated December 6, 2002, Ex 3A. In the same letter WPAS also requested general information regarding the "Work Experience' program, including all policies, goals, criteria and descriptions of the program and it's requirements. *Id*

The District, through its counsel, Lawrence Ransom, verbally contacted WPAS on December 11, 2002, and stated that it would not produce the records requested, claiming that WPAS lacked the authority to obtain such information without the consent of the affected student's parents or guardians Decl. of Herivel ¶ 5, Ex 3 On that same day, WPAS faxed Mr Ransom additional information detailing its authority to obtain the requested records. *Id* at ¶ 6 On December 19, 2002, in another telephone call with WPAS, the District again refused to provide the requested information through its counsel, Mr Ransom Decl of David Girard ¶ 7, Ex 4 WPAS then requested that the District provide, at a minimum, the general policy and program materials requested in its December 6, 2002 letter. *Id*

On January 27, 2003, the District sent 1 general brochure and 12 handouts for a total of 13 pages of documentation regarding Heritage High School's "Work Experience" program to WPAS, but continued to refuse to disclose the remainder of the requested

---

[1] Specifically, WPAS sought the names, addresses and phone numbers of affected children and their parents or guardians

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

information Decl of Herivel, Letter from Lawrence Ransom to Tara Herivel, dated January 27, 2003, Ex. 3D

In response to the District's verbal refusals to produce the requested directory information based upon its belief that WPAS lacked the federal statutory authority to obtain the requested materials, WPAS submitted a written overview on January 15, 2003 to the District, by and through its counsel, detailing WPAS' federal statutory and regulatory authority to obtain the requested information. Decl. of Herivel, Letter from Tara Herivel to Larry Ransom, dated January 15, 2003, Ex 3C In that letter, WPAS reiterated that federal statutes require production of requested documents by the District within 3 days and gave the District one additional week to produce the requested records *Id* The District again verbally refused to produce the requested information in a phone conversation from Mr Ransom to WPAS on January 22, 2003 Decl of Herivel ¶10, Ex 3 To date, the District has also refused to provide its reasoning for denying the request in writing as required by 42 U S C §15043(a)(J)(I). Decl of Herivel ¶ 14, Decl. of Girard ¶ 8

In addition, WPAS informed the District in its January 15, 2003 letter that it was also required to produce the names and addresses of the guardians of all children addressed in WPAS' original records request dated December 6, 2002, as required by 45 CFR §1386 22 (h)(I).[2] The District has and continues to refuse to disclose the requested information The District has not responded to WPAS' multiple requests for information in compliance with federal law. Rather, it has only communicated verbally through their

---

[2] This section of the regulations promulgated governing the DD Act provides that

> If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities

45 CFR §1386 22 (h)(I)

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS WASHINGTON 98020
(425) 776 1199 Fax (425) 776 0601

counsel that the District does not believe that WPAS has the authority to obtain such information, and that the District is not motivated to produce the requested information, in any event Decl. of Herivel ¶ 5, 10, 8, Ex. 3. Nor has the District ever provided WPAS with a written denial of WPAS' request or a statement justifying such a denial Decl of Herivel, ¶ 14, Decl of Girard, ¶8.

## III. Argument

### A. A Preliminary Injunction Should be Granted in Favor of WPAS.

WPAS seeks a preliminary injunction requiring that the District provide it with directory information, including names, phone numbers and addresses for: (1) all children at Heritage High School who participate in the "Work Experience" program, (2) all children at Heritage who collect garbage and/or recycling at the direction or request of school personnel; and (3) all children at Heritage who collect, clean and store tables and chairs following meal periods at Heritage, clean up the lunch room, and/or perform any other janitorial work at Heritage.

A preliminary injunction is necessary in this case because without it WPAS will suffer actual, immediate and irreparable harm. This harm will result from the continued interference by the District with WPAS' federal mandate and duty to be an effective protection and advocacy system, as well as continued violations of WPAS' constitutional rights under the First Amendment of the United States Constitution *See Developmental Disabilities Advocacy Center, Inc v Melton*, 689 F 2d 281, 287 (1st Cir 1982), *Budke v Robbins*, 739 F Supp 1479 (D.N M 1990) Additionally, as a result of the District's denial of WPAS' information request, the District is unlawfully interfering with the affected childrens' right to access WPAS' services

### B. Standing

In order to have standing to bring an action, an individual or entity must demonstrate that he, she or it has suffered actual injury to a legally protected interest. *Columbia Apartment Association v City of Pasco*, 2688 F.3d 791, 797 (9th Cir 2001),

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

*Yesler Terrace Communıty Councıl v Cısneros*, 37 F 3d 442, 445 (9th Cır 1994) The ınjury must be concrete, partıcularızed, actual, and ımmınent. *Allan v Unıversıty of Washıngton*, 140 Wash 2d 323, 332 (2000). Further, there must be a causal relationshıp between the injury and defendants' challenged conduct, and a favorable decısıon by thıs Court wıll redress the ınjury. *Luȷan v Defenders of Wıldlıfe*, 504 U S 555, 560-61, 112 S Ct 2130 (1992)

Courts have consıstently held that where protection and advocacy access rıghts have been denıed, the protection and advocacy system ıtself has standıng to brıng an actıon to enforce its statutory rıghts to access to facılities, resıdents, and records under the Acts *Alabama Dısabılıtıes Advocacy Program v J S Tarwater Developmental Center*, 894 F Supp. 424, 427 (M D Ala. 1995) (a facılity serving people with mental retardatıon ordered to ımmedıately release records to a P & A for two deceased residents who the P & A belıeved may have been subject to abuse and neglect whıle residıng ın the facılıty), *Melton*, 689 F. 2d at 288

Here, WPAS has standıng to brıng thıs actıon on ıts own behalf, because the refusal of access to dırectory ınformatıon by the District constitutes an ınȷury in fact to WPAS' legally protected ınterests *See Iowa Protectıon and Advocacy Servıces, Inc v Rasmussen,* 206 F.R D 630, 635 (S.D Iowa 2001) (denıal by state agency of P & A's full access rights constıtutes ırreparable harm to P & A's duty to investıgate) Federal statutes requıre that WPAS pursue legal, admınıstrative and other appropriate remedies to ınsure the protectıon of persons wıth disabilities. *See* PAIMI Act, 42 U S C.§10801, *et seq , as amended*; the DD Act, 42 U S C. §15041 *et seq., as amended*; the PAIR Act, 29 U S C § 794e, PATBI Act, 42 U S C. § 300d-52, and RCW 71 A 10 080 The Acts provıde WPAS wıth broad access rıghts to ınformatıon regardıng ındıvıduals wıth dısabılıtıes ın facılıtıes or programs, such as Herıtage Hıgh School, for the purpose of monıtorıng facılıty or program condıtıons and treatment, ınvestıgatıon of complaınts of abuse and neglect, and provıdıng protectıon and advocacy servıces provided by WPAS

WA Protectıon & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

Nevertheless, the Dıstrıct persısts ın refusing WPAS access to the Heritage Hıgh School's dırectory ınformatıon This violates WPAS' statutory rıghts and dutıes under the Acts and RCW 71 A 10 080 [3] Further, the Dıstrıct ıs vıolating the rıghts of Herıtage Hıgh school students protected by the Acts and RCW 71 A 10 080

Thıs ınjury ıs concrete, particularized, actual, and ımminent There ıs a causal relatıonshıp between the ınjury and defendants' challenged conduct, and a favorable decısıon by thıs Court wıll redress the ınjury *Northeastern Florıda Chapter of Assocıated General Contractors of Amerıca v Cıty of Jacksonvılle*, 508 U.S. 656, 663, 113 S Ct 2297, 2302 (1993); *Lujan*, 504 U.S. at 560-61, *Tarwater*, 894 F Supp at 427.

**C. Legal Standards for Issuance of a Preliminary Injunction**

A prelımınary ınjunctıon should be ıssued upon a showıng of eıther (1) probable success on the merıts and possible ırreparable ınjury or (2) serıous questions goıng to the merıts and a balance of hardshıps tıppıng decidedly towards the party requesting the prelımınary relıef *Textıle Unlımıted Inc v A BMH & Co , Inc* , 240 F 3d 781, 786 (9th Cır 2001), *Brıggs v Sullıvan*, 886 F 2d 1132, 1143 (9th Cır 1989). As the Court of Appeals observed ın *Beltran v Myers*, 677 F 2d 1317, 1320 (9th Cir 1982) "the greater the relative hardshıp to the movıng party, the less strong need be the showıng of probable success that ıs requıred " The alternative standards set forth ın *Brıggs* are simply "extremes on a sıngle contınuum" ın whıch the "crıtıcal element ıs the relative hardshıp of the parties " *Bends v Grand Lodge of the Internatıonal Assocıatıon of Machınısts and Aero Space Workers*, 584 F 2d 308, 315 (9th Cir 1978) "If the harm that may occur to the plaıntıff ıs suffıcıently serious, ıt ıs only necessary that there be a faır chance of success on the merıts " *Wıllıam Ingles and Sons Bakıng Co v ITT Contınental Bakıng Co* , 526 F.2d 86, 88 (9th Cır 1975) Put another way, ıf the balance of hardshıps favors a movıng party, a prelımınary ınjunctıon should ıssue even though the questions raısed are only "serıous enough to requıre lıtıgatıon "

---

[3] RCW 71A 10 080 provıdes, ın pertınent part that WPAS "shall have the authorıty to pursue legal, admınıstratıve, and other approprıate remedıes to protect the rıghts of the developmentally dısabled and to ınvestıgate allegatıons of abuse and neglect "

WA Protectıon & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

*Briggs v Sullivan*, 886 F 2d at 1132, citing *Arcamuzi v Continental Airlines*, 819 F 2d 935, 937 (9th Cir 1987) Where the balance of hardships favors the moving party a preliminary injunction should issue upon "the recognition that there was a possibility of irreparable injury " *Briggs v Sullivan*, 886 F.2d at 1146. Finally, the public interest is one of the traditional equitable factors a court should consider in granting injunctive relief. *Chalk v United States District Court*, 840 F 2d 701, 710 (9th Cir. 1988)

**1. WPAS is Likely to Succeed on the Merits**

The probability that WPAS will succeed on the merits of its claims that the District has violated WPAS' federal statutory and constitutional rights is great Given the likelihood of success, and considering the balance of hardships to the parties and the detrimental effect upon the public in general, WPAS is entitled to the preliminary injunction it seeks

**a. The District has Violated WPAS' Federal Statutory Rights**

Protection and advocacy systems (P & As) such as WPAS have a statutory right of access to individuals under both the PAIMI and PADD Acts, and their implementing regulations. *See Robbins v Budke*, 739 F Supp. 1479, 1487 (D.N M 1990). The Acts also require that the P & A be "effective" *Mississippi Protection and Advocacy System v Cotten,* 929 F 2d 1054, 1058-59 (5th Cir. 1991) (facilities have an affirmative duty to implement policies and practices which promote effective access by P & As to their residents) In order to be effective, a P & A must have broad access to individuals with disabilities, their records and the facilities that serve them *Tarwater,* 894 F. Supp 424 at 429

Additionally, such access is necessary for the protection and advocacy system to fulfill its duty under the Acts to conduct "full investigations" of allegations that an individual with a disability has been abused and neglected "Full investigation" means "access to facilities, clients and records authorized under these regulations, that is necessary for a protection and advocacy ("P&A") system to make a determination about

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

whether alleged or suspected instances of abuse and neglect[4] are taking place or have taken place." 45 C F R § 1386.19; 42 C F.R. § 51 2.

**b. WPAS' Probable Cause Authority**

Under both the DD and PAIMI Acts, a primary component of WPAS' mandate is to conduct a "full investigation" into allegations that an individual or a group of individuals with a mental illness and/or developmental disability has been or may be abused and/or neglected [5] A P & A can invoke its probable cause authority in cases involving individuals or to groups of individuals *Pennsylvania Protection and Advocacy, Inc v Royer-Greaves School for the Blind,* No. CIV A 98-3995, 1999 WL 179797, slip op. at 11 (E D Pa March 25, 1999) (a P & A is mandated to "advocate for all individuals with developmental disabilities, not just those who become their clients")

In order to carry out this mandate the DD Act and the PAIMI Act provide WPAS broad access to individuals with mental illness and/or developmental disabilities and to their treatment and other related information, records and/or reports. *Tarwater*, 894 F Supp at 429; *Budke*, 739 F Supp at 1485 WPAS has the authority to have access to such records when

> any individual with a developmental disability, in a situation in which the individual has a legal guardian, conservator, or other legal representative; a complaint has been received by the system about the

[4] Under the Acts, "abuse" is defined as any act or failure to act which was performed, or was failed to be performed, knowingly, recklessly, or intentionally, and which caused or may have caused injury to an individual with developmental disabilities, mental illness or other disabilities as defined by the Acts, including, but not limited to such acts such as verbal, nonverbal mental or emotional harassment, which is likely to cause physical or psychological harm or result in long term harm if such practices continue 45 C F R § 1386 19 (DD Act), 42 C F R § 51 2 (PAIMI Act) "Neglect" is defined under the Acts as a negligent act or omission by an individual responsible for providing treatment or services which caused or may have caused injury or death to an individual with developmental disabilities, mental illness or other disabilities as defined by the Acts, and includes acts or omissions such as failure to establish or carry out an appropriate individual program plan or treatment plan *Id*

[5] A "full investigation" is defined as "access to facilities, clients and records authorized under this part that is necessary for a P & A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place " 42 CFR § 51 2, *see eg*, *Iowa Protection and Advocacy Services, Inc* 206 F R D at 638 (" even is a complaint is not filed, if the protection and advocacy system determines that there is 'probable cause' of 'abuse and neglect,' it may access the individual's records")

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS, WASHINGTON 98020
(425) 776 1199 Fax (425) 776 0601

> individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause [for the P & A] to believe that such individual has been subject to abuse or neglect

42 U S C § 15043 (H)(I-II)

The PAIMI regulations define "probable cause" as "a reasonable belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect. The [P & A staff person] making such a determination may base his or her decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions, or problems that are usually associated with abuse and neglect " 42 C F R §51 2 [6] "It is incumbent upon the P & A to determine probable cause " *See Arizona Center for Disability Law v Allen*, 197 F R D 689, 693 (D A Z 2000) The PAIMI and DD Act regulations "support the conclusion that the P & A is the final arbiter of probable cause " *Id, Iowa Protection and Advocacy Services, Inc* 206 F R D at 638 (The P & A shall make the probable cause determination, not a state agency).

Here, WPAS has received a complaint from a parent that children with disabilities at Heritage High School are required to regularly collect trash and recycling in the school's "Work Experience" and "Life Skills" programs, and collect and clean tables and chairs following lunch periods. Based upon this complaint, WPAS determined that it had probable cause to believe that children with disabilities who participate in the "Work Experience" and "Life Skills" programs at Heritage High School are being neglected, abused and/or discriminated against due to their disabilities. Even if the District does not agree with WPAS' determination that it has probable cause, it may not deny WPAS'

[6] The DD Act regulations define "probable cause" identically 42 C F R § 1386 19

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS WASHINGTON 98020
(425) 776 1199 FAX (425) 776 0601

access request on the basis of its belief that such cause does not exist because WPAS is the sole and final arbiter of whether probable cause exists *Arizona Center for Disability Law v Allen*, 197 F.R.D at 693

**i. WPAS' has Probable Cause Authority to Obtain Names, Addresses, and Telephone Numbers from Heritage High School for Individuals for whom it has Probable Cause to Believe may have been or will be Neglected, Abused and/or Subject to Discrimination Based on Disability.**

Courts have found that P & A requests for information such as names, address and phone numbers of individuals for whom the P&A has probable cause to believe have been or may be abused or neglected, are well within the access authority of P & As, as such information is necessary in order for the P & A to effectively and fully carry out its mandate such investigations. *See, e g , Georgia Advocacy Office v Borison, et al* , 520 SE 2d 701 (1999) (where Georgia P & A had probable cause to believe that drug trial participants had been abused and neglected, appellate court remands to superior court with instructions to release all relevant records, including the names, addresses and other contact information for all relevant study participants to P & A)

Generalized allegations regarding conditions are sufficient to support a determination of probable cause to warrant the release of individual records *Iowa Protection and Advocacy Service, Inc v Gerard Treatment Programs, LLC,* 152 F Supp 2d 1150, 1176 (N D. Iowa 2001) The district court in *Gerard* found that based upon allegations of "probable cause… as to potential for serious abuse of all residents" of a facility, the P & A should have access to all such residents and their records without requiring that their guardians first provide consent *Id* In *Gerard,* the P & A relied upon a "generalized" determination of probable cause, rather than allegations regarding specified individuals *Id* at 1171-72.

/ / /

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

It is important to note that generally the P & As' broad authority to obtain records of clients and potential clients it believes may be subject to abuse, neglect and discrimination prevails over the inaction or objection of the affected person's guardian Thus, protection and advocacy systems are enabled by federal law to bypass a guardian's consent even if that consent is withheld, or where the guardian refuses to act on behalf of the individual DD Act, 42 U S.C § 15043 (I)(i-ii)(III-V) As stated in *Disability Law Center, Inc , v Riel*

> where there is a complaint or probable cause [42 U S C § 15043(2)(A)(i) and B] gives the P & A the right to access those records necessary to "pursue legal, administrative and other appropriate remedies or approaches to ensure the protection of, and advocacy for" individuals with developmental disabilities and "to investigate incidents of abuse and neglect of individual [sic] with developmental disabilities" even where the guardian does not give her consent Thus, a construction of [42 U S.C § 15043(2)(A)(i) and B] permitting the guardian to block all access to records necessary to investigate an incident would effectively give the guardian veto power over the investigation itself, which would thwart the express statutory mandate of the P & A system

130 F Supp 2d 294, 299 (D Mass 2001), *see also Pennsylvania Protection & Advocacy, Inc v Royer-Greaves School for the Blind*, 1999 WL 179797 at 8, 10 (E D Pa 1999) (a guardian does not have authority to deny P & A access to the records of an individual with disabilities), *Michigan Protection & Advocacy Services, Inc v Miller*, 849 F Supp 1202, 1208 (W.D Mich. 1994) (the DD Act does not require parental consent for P & A to access educational records and that the "Act clearly mandate[s] that [P & A organizations] have authority to access .. records otherwise protected by the Family

/ / /

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

Educational Rights and Privacy Act in specific cases where developmentally disabled and mentally ill individuals are involved.")[7]

Here, WPAS requests only the contact information for children who may be suffering abuse, neglect and discrimination in the defendants' school district. In the event that WPAS obtains this information, WPAS is permitted under federal law to perform its investigatory mandate and duty in the absence of a guardian's consent, or even against a guardian's express wishes, if WPAS finds there is probable cause to investigate credible allegations of abuse and neglect In this instance, however, WPAS simply seeks directory information to begin the preliminary steps of investigation.

WPAS plainly has probable cause here A parent complained to WPAS that the District is singling out children with disabilities to perform janitorial functions at one of its high schools in full view of other students Children are placed in a demeaning and humiliating position before their peers and are readily identifiable to their peers as children with disabilities due to their janitorial duties. In addition, the District impermissibly equates education with janitorial work for children with disabilities WPAS staff therefore reached the reasonable conclusion that, under the circumstances, children with disabilities have been or may be subject to abuse, neglect and/ or discrimination due to their disabilities

WPAS is the final arbiter of probable cause Once such a probable cause determination has been reached WPAS has the authority and duty under federal law to investigate The District has and continues to block WPAS' ability to fulfill its mandates to fully and effectively investigate The District should therefore be ordered to immediately provide the requested information[8]

---

[7] A P & A's probable cause authority to access facilities, clients and records will also trump a claim of attorney work product, and preempts conflicting state law that limits the P & A's access rights *Iowa Protection and Advocacy Services, Inc*, 206 F R D at 639-642

[8] Although WPAS is entitled to the records of the individuals for whom it has alleged probable cause, at this time, WPAS only seeks access to the names, address and phone numbers of the individuals as set forth plaintiff's probable cause letter of December 6, 2002 As in *In re Petition of Georgia Advocacy Office* and *Cramer*, WPAS is entitled to this information for those individuals who have legal guardians, WPAS is

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

**2. The District has Refused to Provide Its Reasoning for Denying WPAS' Request in Writing in Violation of Federal Law.**

The DD Act requires that the District respond within 3 days to WPAS' records/information request, and include written reasoning for the denial, as well as the names and contact information for all legal guardians for children with disabilities who are presently enrolled in, or have participated in the "Work Experience" program within the last year 42 U S C §15043(a)(J)(I) In addition, under the DD Act

> If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities.[9]

45 CFR §1386 22 (h)(I)

WPAS sent its original request for information on December 6, 2002 and spoke with the District, through its counsel, by telephone on December 11 and 19, 2002, and reminded the District in a subsequent letter on January 15, 2003 of this requirement; however, the District has nevertheless chosen to ignore this requirement entirely, in further violation of federal law

**E. The District's Violation of WPAS' First Amendment Rights**

In addition to violating WPAS' federal statutory and regulatory rights, the District has also violated WPAS' First Amendment rights as guaranteed by the United States

---

entitled to the names, addresses, and phone numbers of the guardians to WPAS under 42 C F R §51 43 and 45 C F R §1386

[9] Note that because P & A statutes are to be read coextensively, the children need not have developmental disabilities to fall within the ambit of this provision *See* S Rep 454 Cong 2d Sess 10 (1988), S Rep 109, 99th Cong 1st Sess 3 (1986), S Rep 113, 100th Cong Sess 24(1987), *see also Budke*, 739 F Supp 1479 (D N M 1990), *and Alabama Disabilities Advocacy Program*, 894 F Supp 424 (M D Ala 1995), aff'd 97 F 3d 492 (11th Cir 1996), *see generally*, 34 CFR 381 *et seq* The same provisions cited above therefore apply to all relevant children with disabilities, regardless of disability type



WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

Constitution WPAS has constitutionally protected rights to freedom of speech and association under the First Amendment to the United States Constitution *Robbins v Budke,* 739 F.Supp 1479, 1485 (D N.M. 1990 (" [a] P & A also has a protected First Amendment right to communicate and consult with the population it was created to serve ") (citations omitted), *Developmental Disabilities Advocacy Center Inc v Melton*, 689 F 2d 281, 287 (1st Cir. 1982), *see also NAACP v Button*, 371 U S 415, 428, 83 S Ct 328 (1963)

In addition, protection and advocacy organizations have a right and duty to conduct investigations. this right includes the right to interview witnesses and to observe the physical environment of a facility of entity in order to fulfill its responsibilities under its federal mandates. *See, e g , Robbins* 739 F.Supp at 1489; *and Cotten*, 929 F 2d 1054 Protection and advocacy organizations also must be permitted to speak to individuals who are not the protection and advocacy system's clients, but may provide information relevant to an investigation. *Robbins,* 739 F.Supp at 1487 Denials of such access "create a chilling effect of gigantic proportions " *Cotten*, 929 F 2d at 1057

In the present case, the District's refusal to allow WPAS access to the requested information of other children who may be subject to discrimination, abuse and neglect at Heritage High School effectively creates a chilling effect of "gigantic proportions." *Id* WPAS is essentially rendered ineffective, unable to investigate serious allegations against the school in violation of its First Amendment rights This denial of access and violation of WPAS' First Amendment rights has caused WPAS, and the individuals on whose behalf WPAS is mandated to protect and advocate, to incur an unreasonable delay in conducting a full and meaningful investigation Such delays are unacceptable as they may prevent WPAS "from acting within prescribed deadlines or may cause a violation of rights to go unaddressed until it is too late to remedy " *Id*, at 1488.

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS WASHINGTON 98020
(425) 776 1199 Fax (425) 776 0601

**F. Absent a Preliminary Injunction, WPAS is Likely to Suffer Irreparable Harm and the Balance of Hardships Tips Strongly in the Favor of WPAS.**

**1. Refusing to Produce the Directory Information of Other Affected Students Will Cause WPAS Irreparable Harm.**

In other access cases brought by protection and advocacy systems courts have found that the violations of protection and advocacy system access have caused the protection and advocacy systems to suffer irreparable harm warranting the issuance of preliminary and permanent injunctive relief For example, in *Gerard*, the district court found that the protection and advocacy system demonstrated irreparable harm warranting issuance of a preliminary injunction to obtain access to records and patients 152 F Supp 2d at 1173 Specifically, the district court stated that the protection and advocacy agency suffered irreparable harm by defendants' actions preventing it from "pursuing fully its right to access records and patients, even where the guardians do not consent, in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring " *Id , see also Wisconsin Coalition for Advocacy, Inc v Czaplewksi*, 131 F. Supp. 2d 1039, 1051 (E D Wis 2001) (defendants' refusal to provide the protection and advocacy system with access to records "does, in a very real and identifiable way, pose a threat to the [P & A's] being able to discharge its obligations [a]nd no amount of damages will remedy that sustained harm "); *Advocacy Center v Stalder*, 128 F Supp 2d 358 (M D La 1999)

Here, as in *Gerard* and *Czaplewksi*, if WPAS is not afforded immediate access to the directory information of children in Heritage's special education program who are presently required to perform menial, demeaning tasks like collecting garbage at Heritage, WPAS will be unable to fully and adequately perform its federally mandated

///

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS WASHINGTON 98020
(425) 776 1199 Fax (425) 776 0601

duties to protect the rights of people with disabilities, to remedy rights violations, and provide advocacy services, and will therefore be irreparably harmed

Courts have noted that money damages are inadequate compensation for the threat and loss of constitutional rights. Thus, constitutional deprivations are considered per se irreparable harm for injunctive purposes. *See Abu-Jamal v Price*, 154 F 3d 128 (3rd Cir 1998), *Marcus v Iowa Public Television*, 97 F 3d 1137 (8th Cir. 1996), *Covino v Patrissi*, 967 F 2d 73, 77 (2nd Cir 1992); *Goldie's Bookstore v Superior Court*, 739 F 2d 446, 472 (9th Cir 1984), *University of Hawaii Professional Assembly v Cayetano*, 16 F Supp 2d 1242, 1247 (D Hawaii 1998). *See also* 11A Wright, Miller and Kane, *Federal Practice and Procedure* § 2948.1, p. 161 (2d Ed. 1995) In addition, courts have consistently found that the " loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" in the preliminary injunction context *Elrod v Burns*, 427 U.S 347, 373, 96 S. Ct. 2673, 2690 (1976); *Gentala v Tucson*, 213 F 3d 1055, 1061 (9th Cir 2000); *S O C Inc v County of Clark*, 152 F.3d 1136, 1148 (9th Cir ), *amended by*, 160 F 3d 541 (9th Cir 1998)

Children with disabilities will also suffer irreparable harm. *See Cotten*, 929 F 2d 1054 at f n 4 (further imposition of undue limitations on protection and advocacy access presented an immediate and realistic threat of genuine harm to all the residents in defendants' facility) WPAS serves vulnerable individuals with disabilities, including vulnerable children with disabilities, some of whom attend school in the Evergreen School District Some of these children have difficulties with communication and many fear retaliation, as may their parents or guardians: they are therefore often unlikely to initiate contact with the WPAS regarding rights violations WPAS therefore must have full and meaningful access to all children with disabilities in the Evergreen School District

Additionally, WPAS' potential clients have suffered irreparable harm to their dignity and educational prospects· this harm has and is likely to continue to lead to

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

serious injury if a preliminary injunction is not issued *See Chapman v Department of Education,* 981 F Supp.2d 981, 989 (N D Cal ) *rev'd in part on other grounds*, 2002 WL 31856343 (9th Cir 2002) ("Harm to a student's dignity and educational prospects constitutes irreparable injury"; preliminary injunction in ADA case granted); *see also Alvarez v Fountainhead, Inc*, 55 F.Supp 2d 1048, 1050 (N D Cal. 1999) (loss of educational opportunity constitutes irreparable harm to support preliminary injunction)

In contrast, any harm suffered by the District if subjected to a preliminary injunction is modest compared to the irreparable harm that WPAS and the children of the Evergreen School District will suffer if a preliminary injunction does not issue At most, the District will be compelled to endure minor inconvenience in producing a list of directory information for WPAS. Any confidentiality concerns the District may have are unfounded, for WPAS is bound by the same statutory duty of confidentiality concerning disclosure of any records as the Evergreen School District DD Act, 45 CFR § 1386 22 (e)(1-3), PAIMI 42 U S C § 10806(a), *Gerard,* 152 F Supp. 2d 1160-61 ("A P & A must maintain the confidentiality of the records to the same extent as the provider of services ") (citations omitted); *Stalder,* 128 F Supp.2d at 366 (rejecting defendant's argument that prisoners' records could not be disclosed to P & A because they were confidential and not subject to public inspection); *Iowa Protection and Advocacy Services, Inc*, 206 F R D at 635 (court grants preliminary injunction where P & A denied access to records and rejects defendants' argument that records are confidential, citing PAIMI's confidentiality provisions)

**2. The Balance of Hardships**

The balance of hardships tips strongly in favor of WPAS, as WPAS must have immediate and full access to the requested directory information to investigate abuse and neglect, and to protect children in the District from discrimination, abuse and/or neglect based upon their disability. This is true particularly given the heightened vulnerability of the children with disabilities that WPAS is mandated to protect and advocate for *See*

WA Protection & Advocacy System
180 WEST DAYTON STE 102
EDMONDS WASHINGTON 98020
(425) 776 1199 Fax (425) 776 0601

*Sullivan v Vallejo City Unified School District*, 731 F Supp 947 (E.D Cal 1990) (the balance of hardships tends to tip strongly in the favor of a child with disabilities who is denied reasonable accommodation versus the comparatively slight inconvenience to a school district in providing those accommodations)

**3. No Adequate Remedy at Law**

WPAS has no adequate remedy at law The District has and continues to violate WPAS' access rights Thus, preliminary permanent injunctive relief is warranted in this case

**4. Public Interest**

The public interest is a traditional equitable criteria used by courts when considering whether to grant injunctive relief *Textile Unlimited* 240 F.3d at 786 The public interest favors granting of WPAS' motion for a preliminary injunction that would require the District to provide the requested information so that WPAS may have full and meaningful access to investigate allegations of abuse, neglect and/or discrimination against children with disabilities who attend school in the Evergreen School District

Congress itself, in establishing the protection and advocacy system, best expressed the public interest at issue "[States must] have in effect a system to protect and advocate the rights of individuals with developmental disabilities," where a system is defined as a "protection and advocacy system to protect the legal and human rights of individuals with developmental disabilities " 42 U S C § 15043(a)(1), 42 U S C § 15041 Congressional expression of the public interest is repeated in state law 71A 10 080 Furthermore, Congress explicitly stated in the PAIMI Act that its purpose is to "(1) ensure that the rights of individuals with mental illness are protected, and (2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will .. investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred " 42 U.S.C § 10801(b)

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601

As succinctly stated by the district court in *Gerard*: " The public interest, as weighed by Congress, weighs in favor of injunctive relief permitting [a P & A] to obtain access. " 152 F.Supp. 2d at 1175; *accord, Iowa Protection and Advocacy Services*, 206 F R.D at 635

## IV. Conclusion

For the reasons set forth above, WPAS' motion for preliminary injunction should be granted.

DATED this 5th day of February, 2003.

Respectfully Submitted,

Washington Protection & Advocacy System, Inc , Plaintiff

Tara Herivel, WSBA #31803
David Girard, WSBA #17658
Attorneys for the Washington Protection and Advocacy System, Inc

WA Protection & Advocacy System
180 West Dayton Ste 102
Edmonds Washington 98020
(425) 776 1199 Fax (425) 776 0601